UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MELVIN KINDLE, *et al.*                                          PLAINTIFFS

v.                                                                     CIVIL ACTION NO. 3:07-CV-158-S

CITY OF JEFFERSONTOWN, *et al.*                          DEFENDANTS

## **MEMORANDUM OPINION**

Plaintiffs Melvin Kindle, Bradley Silveria, and Diedra Handy[1] brought this suit against defendants City of Jeffersontown, Clay Foreman, and Jeffersontown Civil Service Commission, alleging causes of action pursuant to the Kentucky Whistleblower Act and 42 U.S.C. § 1983. This court previously granted summary judgment in favor of Defendants, but the Sixth Circuit reversed. Defendants have now filed a second motion for summary judgment (DN 101). For the reasons stated herein, that motion for summary judgment will be granted.

**I.**

Plaintiffs worked for the Jeffersontown Police Department ("JPD"). Kindle was a police officer, while Silveria and Handy were dispatchers. In September of 2006, Silveria and Handy told Chief of Police Colonel Fred Roemele that a hostile work environment created by Lieutenant Colonel Peggy Emington had caused them to take medical leave. Roemele stated that he was unable to do anything about Emington because his hands were "politically tied." On October 3, 2006, while both Silveria and Handy were on medical leave, seven sergeants and two corporals met with

---

[1] At the inception of this action, Handy was named Diedra Adkins; she married and changed her name after the action was filed.

Roemele to express concern about misconduct by Emington that was having deleterious effects on the operations of the JPD.

On October 10, 2006, Plaintiffs met with Jeffersontown Mayor Clay Foreman. Plaintiffs told Foreman of their belief that Emington had violated JPD policies. Plaintiffs further told Foreman that they had consulted a lawyer and were considering filing a protected report regarding those departmental policy violations. Foreman, who had heard that Emington's management style conflicted with some people, asked Plaintiffs to hold off on filing any such report until after election day, which was consuming much of his time.

Unbeknownst to Plaintiffs, Roemele had told Foreman that he would be retiring at the end of the year; thus Foreman believed that the new chief that would take over at the beginning of 2007 would have an opportunity to review the complaints with a fresh set of eyes. Foreman asked Roemele to keep an eye on the situation in the meantime.

On October 27, 2006, Plaintiffs tendered a report pursuant to KRS § 61.102 of the Kentucky Whistleblower Act to Foreman, Roemele, Emington, and members of the Jeffersontown City Council. The report stated that it concerned "facts and information relative to actual and/or suspected violations of laws, ordinances, policies and procedures of the City of Jeffersontown and other authorities and jurisdictions and . . . relative to actual and/or suspected incidents and ongoing practices of mismanagement, waste, and abuse of authority occurring within the Jeffersontown Police Department and perpetrated by Lt. Col. Peggy Emington." The report continued to allege that Emington had: (1) violated wage and hour laws by requiring dispatchers to arrive for duty fifteen minutes early and not paying them overtime; (2) generated unnecessary overtime by forcing some dispatchers to work overtime so that others could attend social events with Emington; (3) violated

staffing policy by leaving only one, rather than two, dispatchers on duty on Secretary's Day; (4) failed to contribute to a part-time employee's retirement account and then retaliated against that employee when the employee complained to Roemele and the administration; (5) improperly monitored employees' controlled substance prescriptions through an online database; (6) failed to be firearms-qualified for a number of years; and (7) committed various and miscellaneous acts of mismanagement and abuse of authority. Additionally, Plaintiffs sent a copy of the report to the Jeffersontown Ethics Commission with a letter stating that Plaintiffs were filing an official complaint.

On October 31, 2006, Roemele wrote to Foreman stating that he felt "obligated" to have the JPD investigate the complaint against Emington. The following day, Foreman responded to Roemele that the matter had been referred to the Ethics Commission, and that the JPD should not investigate. Foreman continued that, depending upon the actions taken by the Ethics Commission, any investigation would likely be done by a law enforcement agency other than the JPD.

On November 15, 2006, while the ethics complaint was pending, Kindle appeared before the Jeffersontown City Counsel. He addressed the allegations in Plaintiffs' report, including asserting that he had a First Amendment right to do so.

The Ethics Commission scheduled a preliminary inquiry hearing for November 21, 2006. The day before the hearing, Plaintiffs faxed a notice to the Ethics Commission that they were withdrawing the complaint due to supposed retaliatory action taken by Jeffersontown and the failure of Jeffersontown to respond to their open records request. Nevertheless, the Ethics Commission proceeded with the hearing and dismissed the complaint with prejudice for lack of evidence establishing the Ethics Commission's jurisdiction.

On November 28, 2006, Emington filed with Foreman a sworn complaint against Plaintiffs. The complaint alleged that Plaintiffs violated state laws and JPD standard operating procedures ("SOPs") for their alleged disclosure of false information. It requested that a formal investigation of Plaintiffs be conducted and that charges be brought by the Jeffersontown Civil Service Commission ("JCSC"). Foreman forwarded the complaint to the JCSC, which issued a notice of hearing for December 13, 2006. At Plaintiff's request, the hearing was continued until January 25, 2007.

On December 15, 2006, Emington filed a lawsuit in Jefferson Circuit Court against Plaintiffs, the City of Jeffersontown, and three members of the Jeffersontown City Council. In that action, Plaintiffs moved for a temporary restraining order to prevent the JCSC from holding a hearing on January 25, 2007. The Jefferson Circuit Court denied that motion on January 24, 2007. In the order, the Jefferson Circuit noted that Plaintiffs argued that allowing the JCSC hearing to proceed would subject them to irreparable harm by preventing them from exercising their right to a jury trial under KRS § 61.102, as their only remedy following an adverse administration ruling would be an appeal to circuit court. However, the Jefferson Circuit Court found that a temporary restraining order was not warranted because Plaintiffs were not without an adequate remedy at law if the hearing went forward. Specifically, the Jefferson Circuit Court stated, "Assuming an adverse result on January 25, 2007, Movants have the remedy of appeal; if an advantageous result occurs on January 25, 2007, they are obviously in a legal posture to initiate a suit in Circuit Court."

On January 25, 2007, the JCSC convened. Plaintiffs appeared with counsel and stated that they had elected to pursue their claims in circuit court and would not be presenting evidence, calling witnesses, or making arguments at the JCSC hearing. Silveria and Handy left, while Kindle stayed

behind and watched the remainder of the proceedings. Emington presented evidence to the JCSC. The JCSC deliberated and found that Plaintiffs had violated three rules of the JPD. The JCSC then terminated Plaintiffs' employment.

On February 5, 2007, the JCSC issued written and particularized findings of fact. In the written findings of fact, the JCSC stated:

> The Commission unanimously finds from the evidence that the statements made by [Kindle, Silveria, and Handy] directly, or in the case of the statements made by Respondent Kindle before the City Council on November 15, 2006, and ratified by [Silveria and Handy] by their presence there and then, to have been either false or made intentionally with reckless disregard for their truth or falsity. The Commission further finds that the respondents had every opportunity to learn of their falsity and in many cases direct access to documents which would have indicated falsity. The Commission further finds from the evidence that the statements made November 15, 2006 that the Department, its command, and by implication, the Mayor, the Council, and the City Attorney, was engaged in 'injustice', 'corrpution', and 'unethical behavior' not only to have been false and reckless, but to have seriously damaged the internal morale of the Department, as well as the confidence of the citizens of Jeffersontown in the integrity of the Department.
>
> The Commission also finds from substantial evidence presented that the charges and allegations against LtCol [sic] Emington, and other Department personnel, contained in the 'Report Pursuant to KRS 61.102' filed October 27, 2007 with the Jeffersontown Ethics Commission, were each and every one without basis in law or fact. Further, the Commission finds that a strong inference against the Respondents, unrebutted anywhere in the record, can be drawn from their failure to appear at the hearing scheduled by the Ethics Commission, which resulted in dismissal of their complaint, that they did so because they themselves knew that the complaint had no validity.

The JCSC detailed the state law and JPD rules that the JCSC concluded Plaintiffs violated. It also stated that based on its findings, the JPD and the City of Jeffersontown were free to discipline Plaintiffs.[2]

On February 26, 2007, Plaintiffs filed this action in Kentucky state court, alleging violations

---

[2]Presumably pursuant to KRS 61.102(3)(d).

of the Kentucky Whistleblower Act and 42 U.S.C. § 1983. Defendants removed the action to this court.

On January 9, 2009, this court granted Defendants summary judgment. It held that: (1) Plaintiffs' Kentucky Whistleblower Act claim fails because Jeffersontown was not an employer under the Act; (2) Plaintiffs' First Amendment claims fail because Plaintiffs' speech was not on a matter of public concern; (3) Plaintiffs' First Amendment claim against Foreman in his individual capacity fails because Foreman is entitled to qualified immunity; and (4) Plaintiffs' First Amendment claims against Foreman in his official capacity and JCSC fail because they are duplicative of the claims against Jeffersontown.

Plaintiffs appealed to the Sixth Circuit. The Sixth Circuit held that: (1) Jeffersontown was an employer under the Kentucky Whistleblower Act; (2) Plaintiffs' speech was on a matter of public concern; (3) the finding that Plaintiffs' speech was on a matter of public concern required a remand on the qualified immunity question; and (4) the JCSC was a necessary party to this suit and should not have been dismissed as an entity that could not be sued. *Kindle v. City of Jeffersontown*, 374 F. App'x 562 (6th Cir. 2010). Thus, the Sixth Circuit vacated this court's prior grant of summary judgment to Defendants and remanded for proceedings consistent with its opinion. *Id.* Defendants have now moved for summary judgment again.

**II.**

To prevail on a motion for summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact arises when there is sufficient evidence on which a jury could reasonably find for the non-moving party. See *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 252 (1985). The disputed issue need not be resolved conclusively in favor of the non-moving party, but that party must present sufficient probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-289 (1968). Finally, the evidence must be construed in the light most favorable to the non-moving party. *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

### III.

**A. The Kentucky Whistleblower Act Claim**

The Kentucky Whistleblower Act, KRS § 61.102, prohibits retaliation by an "employer" who engages in certain whistleblowing activity. The Act defines an employer as "the Commonwealth of Kentucky or any of its political subdivisions." KRS § 61.101(2). As noted above, this court previously granted summary judgment on Plaintiffs' claim under the Kentucky Whistleblower Act because it found that Jeffersontown, a city, was not an employer under that Act. The Sixth Circuit reversed, finding that a Kentucky Supreme Court decision suggested that municipalities were employers under the Act.

However, after the Sixth Circuit's decision in this case, the Kentucky Supreme Court issued an opinion in *Wilson v. City of Central City*, 372 S.W.3d 863, 870 (Ky. 2012) in which it definitively stated: "[W]e hold that cities are not political subdivisions under Kentucky's Whistleblower Act, and city employees are therefore not protected by the Act." Based on that holding, Defendants again seek summary judgment as to the Kentucky Whistleblower Act claim against Jeffersontown. Plaintiffs do not lodge any argument against summary judgment.[3] Accordingly, on the basis of

---

[3] In *Wilson*, the Kentucky Supreme Court explained that the courts and the Kentucky Revised Statutes have "muddied the waters with respect to any distinction between a 'city,' a 'municipality,' and a 'municipal corporation.'" 372 S.W.3d at 866-867. In that vein, the Kentucky Supreme Court made clear that its holding in *Wilson* applied only to cities, and that other types of entities, such as

- 7 -

*Wilson*, the court finds that the Kentucky Whistleblower Act claim against Jeffersontown should be dismissed.[4]

**B. The First Amendment Claims**

Defendants argue that Plaintiffs' claims pursuant to 42 U.S.C. § 1983 for violation of the First Amendment fail because the JCSC finding that Plaintiffs' speech was knowingly false or made with reckless indifference to its falsity is entitled to preclusive effect in this court. Defendants continue that speech made with knowledge of or reckless indifference to its falsity is not entitled to First Amendment protections.

In response, Plaintiffs argue that the law of the case doctrine forbids Defendants from raising any argument that Plaintiffs' speech was knowingly or recklessly false. Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (6th Cir. 1983). The issues that constitute the law of the case include those issues decided explicitly or implicitly in prior rulings. *See Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997). "Pursuant to the law of the case doctrine, and the complementary 'mandate rule,' upon remand the trial court is bound to 'proceed in accordance with the mandate and law of the case as established by the appellate court.'" *Westside Mother v. Olszewski*, 454 F.3d 532, 538 (6th Cir.

---

municipal corporations, would have to be assessed individually to determine whether they are "political subdivisions" under the Whistleblower Act. *Id.* at 869-870. Here, the court understands Plaintiffs' silence on the issue to be a concession that Defendant City of Jeffersontown is a "city" and not some other type of entity.

[4] Defendants also request summary judgment as to a claim against Foreman under the Kentucky Whistleblower Act on the basis that there is no individual liability under the Act. However, it does not appear to the court that Plaintiffs ever brought a claim against Foreman under the Kentucky Whistleblower Act.

2006) (quoting *Hanover*, 105 F.3d at 312). By way of contrast, the law of the case doctrine – and the complementary mandate rule – leave the trial court "free to consider any issues not decided 'expressly or impliedly by the appellate court.'" *Kavorkian v. CSX Transp., Inc.*, 117 F.3d 953, 958 (6th Cir. 1997) (quoting *Jones v. Lewis*, 95 F.2d 260, 262 (6th Cir. 1992)). Thus, "[t]he rule of mandate is 'limited to those issues that were necessarily decided in the earlier appeal.'" *Id.* at 959 (quoting *Hanover*, 105 F.3d at 312). The term "necessarily decided" means that an issue was "'fully briefed and squarely decided'" in an earlier appeal. *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 91 F. App'x 370, 374 (2004) (quoting 1B James Wm. Moore, *Moore's Federal Practice* ¶ 0.404[1], at II-5 (2d ed. 1996)).

Here, the Sixth Circuit did not expressly decide that Plaintiffs' statements were not knowingly false or made with reckless indifference to their falsity. Nor is there any basis to believe that the Sixth Circuit impliedly decided the knowing or reckless falsity issue. The knowing or reckless falsity issue was not raised by either party before the Sixth Circuit, nor was it raised before this court in the prior summary judgment motion that led to the appeal. Simply put, there is nothing to suggest that the Sixth Circuit gave any consideration to whether Plaintiffs' speech was knowingly or recklessly false. It certainly cannot be said that the issue was "fully briefed and squarely decided.

Plaintiffs suggest that the Sixth Circuit's finding that Plaintiffs' speech touched a matter of public concern necessarily encompassed a finding that Plaintiffs' speech was not recklessly or knowingly false. In support, they cite the following statement from *Westmoreland v. Sutherland*, 662 F.3d 714, 721 (6th Cir. 2011) concerning the application of *Pickering v. Board of Education of Township High School District 205*, 391 U.S. 563 (1968) when there is an allegation that a public employee's speech was knowingly or recklessly false: "*Pickering* balancing is not required if it is

determined that the employee made statements with knowledge of, or reckless indifference to, their falsity." Thus, Plaintiffs contend that the question of whether employee speech was made with knowledge of, or reckless indifference to, its falsity is a part of the first prong of the *Pickering* test – whether the statement was about a matter of public concern.

However, Plaintiffs ignore that in *Westmoreland*, the Sixth Circuit first determined that, in that case, "the substance of plaintiff's expression undoubtedly involved matters of public concern," 662 F.3d at 720, before continuing on to address whether the plaintiff's speech was intentionally or recklessly false, *id.* at 720-722. In other words, *Westmoreland* supports the notion that the question of whether a statement addressed a matter of public concern is separate and distinct from the question of whether a statement was made with knowledge of and reckless indifference to its falsity. Thus, a decision as to the former question does not necessarily encompass a finding as to the latter question.

To be sure, one statement in the Sixth Circuit's opinion in this case might suggest that this court should not consider Defendants' argument that Plaintiffs' speech was recklessly or knowingly false. Namely, the Sixth Circuit, after concluding that Plaintiffs' speech addressed a matter of public concern, stated that it was "remand[ing] to the district court to conduct the second and third prongs of the *Pickering* test in a manner consistent with this opinion." *Kindle*, 374 F. App'x at 569. But that statement was made under the belief that, having concluded that Plaintiffs' speech was not a matter of public concern, the only issues left on the constitutional question concerned the application of the second and third prongs of *Pickering*. As the parties had only briefed the "public concern" issue before the Sixth Circuit, it was not aware that Defendants may have had an alternative basis for summary judgment that would render the need to reach the second (or potentially the third) prong

of the *Pickering* test unnecessary. When read in context, the Sixth Circuit was simply telling this court to accept that the speech was a matter of public concern, contrary to this court's earlier conclusion, and to continue with the analysis using the standards it set forth in its opinion. The court does not read the statement concerning the need for this court "to conduct the second and third prongs of the *Pickering* test in a manner consistent with this opinion" to foreclose this court from deciding another issue, not previously considered by the Sixth Circuit, that would render unnecessary the remainder of the *Pickering* analysis.

That brings us to Plaintiffs' other procedural argument as to why this court should not reach Defendants' argument concerning the preclusive effect of the JCSC finding: waiver. Plaintiffs contend that Defendants waived the argument that Plaintiffs' speech was recklessly or knowingly false by failing to raise the argument in the previous summary judgment motion or in the appeal to the Sixth Circuit.

The contention that Defendants should have brought this issue before the Sixth Circuit fails, as Defendants were not the ones taking the appeal and were simply responding to Plaintiffs' arguments about why this court was wrong in deciding that Plaintiffs' speech was not about matters of public concern. Defendants thus cannot be faulted for failing to raise a preclusion argument about whether Plaintiffs' speech was recklessly or knowingly false.

Nor does the court find that Defendants failure to make such an argument in their first summary judgment motion is fatal to their ability to make that argument now. While Defendants elected not to make any argument about the falsity of Plaintiffs' speech in their first summary judgment motion, Defendants did raise collateral estoppel and res judicata as affirmative defenses in their answer. Although Defendants certainly could have been more diligent about raising the

argument in their first motion for summary judgment, Plaintiffs are not unduly prejudiced by having to respond to the argument at this stage of the proceedings, especially given that Defendants had asserted collateral estoppel and res judicata as affirmative defenses in their answer. Indeed, the Sixth Circuit has found that a district court did not abuse its discretion by allowing a party to raise a collateral estoppel defense in its second summary judgment motion even where the party did not plead a collateral estoppel defense in its answer. *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997). Here, then, where Defendants did plead a preclusion defense in their answer, the court sees no reason they should not be allowed to raise that defense in their current summary judgment motion.

Thus, we turn to the merits of the issue. In *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986), the Supreme Court held that federal courts must give a state agency's factfinding "the same preclusive effect to which it would be entitled in the State's courts" as long as the state agency was acting in a judicial capacity, resolved disputed facts that were properly before it, and the parties had an adequate opportunity to litigate. The Sixth Circuit has explained that "the application of *Elliott* is a three-step process: first, was the agency acting in a judicial capacity; second, would the decision have preclusive effect under Kentucky law; and third, does the federal action seek to litigate issues already determined by the state agency." *Nelson v. Jefferson County*, 863 F.2d 18, 19 (1988).

As to the first of those questions, the court has little trouble finding that the JCSC acted in a judicial capacity. "An administrative board acts in a judicial capacity when it hears evidence, gives the parties an opportunity to brief and argue their versions of the facts, and the parties are given an opportunity to seek court review of any adverse findings." *Nelson*, 863 F.2d at 19; *see also Herrera v. Churchill McGee, LLC*, 680 F.3d 539, 547 (6th Cir. 2012). The JCSC heard evidence in this case and the parties had an opportunity (whether they chose to take advantage of it or not) to argue their

versions of facts. It is also undisputed that Plaintiffs could have appealed an adverse result to the Jefferson Circuit Court; indeed, it was primarily on that ground that the Jefferson Circuit Court declined to issue a temporary restraining order preventing the administrative hearing from occurring (*see* DN 101-11).

Next, the court must consider whether Kentucky courts would grant preclusive effect to the JCSC findings. In *Herrera v. Churchill McGee*, the Sixth Circuit stated:

> Kentucky courts preclude litigation of an issue in a subsequent proceeding if that same issue was actually litigated, actually decided, and necessary to the judgment in a prior proceeding. *Yeoman v. Ky Health Policy Bd.*, 983 S.W.2d 459, 465 (Ky. 1998). As in federal court, "[d]ecisions of administrative agencies acting in a judicial capacity are entitled to the same res judicata effects as judgment of a court." *Ky. Bar Ass'n v. Harris*, 269 S.W.3d 414, 418 (Ky. 2008) (citing *Godbey v. Univ. Hosp. of the Albert B. Chandler Med. Ctr., Inc.*, 975 S.W.2d 104, 105 (Ky.Ct.App. 1998).

680 F.3d at 550.

Here, Emington's complaint charged that the allegations made by Plaintiffs in their report pursuant to KRS § 61.102 were false. Emington's complaint further quoted KRS § 61.102(3)(d), which states that KRS § 61.102 should not be construed to prohibit disciplinary action in the case of an employee who discloses information with knowledge of, or reckless disregard for, its falsity. The JCSC found, based on the hearing it held, that Plaintiffs' statements were false and were made with at least reckless disregard for, if not knowledge of, their falsity. The JCSC thus determined that Plaintiffs were subject to disciplinary action. Accordingly, the issue of whether Plaintiffs' speech was made with knowledge of, or reckless disregard for, its falsity was "'actually litigated, actually decided, and necessary to the judgment'" of the JCSC. *Herrera*, 680 F.3d at 550. That same conclusion also suffices to establish the presence of the third step of the analysis set forth in *Nelson* – the issue decided by the JCSC is the same issue on which Defendants premise their summary

judgment argument.

Plaintiffs contend that the JCSC acted arbitrarily by adjudicating Plaintiffs' First Amendment rights, which was beyond the power of the JCSC. But Plaintiffs' argument confuses the difference between claims and issues. The JCSC determined a factual issue – whether Plaintiffs' speech was knowingly or recklessly false. While such a factual issue is also relevant to (indeed, potentially dispositive of) a First Amendment claim, it does not mean that the JCSC adjudicated a *claim* it had no power to reach. It simply adjudicated a necessary factual issue concerning Emington's complaint, and there is no dispute that the JCSC had authority over that complaint.

Because the conclusion of the JCSC that Plaintiffs' speech was knowingly false or made with reckless disregard for its falsity is entitled to preclusive effect in this court, dismissal of Plaintiffs' First Amendment claims against Defendants is appropriate. *Westmoreland v. Sutherland*, 662 F.3d 714, 720-721 (6th Cir. 2011) (holding that intentionally or recklessly false statements are not entitled to First Amendment protection). That includes any official capacity claim against Mayor Foreman, since such a claim is simply a claim against the City of Jeffersontown. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Additionally, Foreman is entitled to qualified immunity on the individual claims against him since he did not violate Plaintiffs' constitutional rights. *See, e.g.*, *Scott v. Harris*, 550 U.S. 372, 377 (2007).

## IV.

For the foregoing reasons, the court will grant Defendants' motion for summary judgment. A separate order will be entered in accordance with this opinion.

September 25, 2013

Charles R. Simpson III, Senior Judge
United States District Court